UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD L. LOWE, | Case No. 1:24-cv-00750-HBK |
| Plaintiff, | ORDER AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY[1] |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (Doc. Nos. 14, 16) |
| Defendant. | |

Richard L. Lowe ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income and disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 14, 16-17). For the reasons set forth more fully below, the Court affirms the Commissioner's decision.

**I.   JURISDICTION**

Plaintiff protectively filed for supplemental security income and disability insurance

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 10).

1   benefits on December 9, 2020, alleging a disability onset date of October 1, 2020 in both
2   applications. (AR 236-49). At the hearing, Plaintiff amended the alleged onset date to December
3   9, 2020. (AR 36). Benefits were denied initially (AR 70-101, 139-43) and upon reconsideration
4   (AR 102-35, 146-50). Plaintiff appeared for an online video hearing before an administrative law
5   judge ("ALJ") on June 6, 2023. (AR 31-65). Plaintiff testified at the hearing and was represented
6   by counsel. (*Id*.). The ALJ denied benefits (AR 13-30) and the Appeals Council denied review
7   (AR 1-6). The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II.   BACKGROUND

9   The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's
10  decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are
11  summarized here.

12  Plaintiff was 52 years old at the time of the hearing. (AR 38). He testified he did not
13  complete ninth grade, but his disability report states he completed eleventh grade and received
14  special education. (AR 41, 277). He lives alone in an apartment. (AR 40, 43). He has no past
15  work history that qualifies as substantial gainful activity. (AR 25, 62). He was shot at age 17 in
16  the torso and right arm, and shot again in the hand at age 27. (AR 41). Plaintiff testified that he
17  has difficulty doing daily activities because of his back, hand, and foot. (AR 44). From 2009 to
18  2020 Plaintiff performed in-home support services for his mother 8 hours a day, 5 days a week.
19  (AR 47). Plaintiff testified he stopped taking care of her in 2020 after she passed away. (*Id*.). He
20  reported he could not do the same type of work anymore. (AR 48). Plaintiff reported vision
21  problems; gout that causes pain in hands, feet, and knees; diabetes type II; and nerve pain in his
22  right foot. (AR 49-52). He testified he can walk "maybe" half a block before he has to stop and
23  rest for about 5 minutes; he can stand for 10 to 15 minutes at a time; he can sit for 30 minutes to
24  an hour before he has to get up and move around; he can lift and carry 10 to 15 pounds; he can
25  use his hands for eating, putting on clothes, bathing and dressing; and his daughters help him with
26  grocery shopping and cleaning his house. (AR 54-56). Plaintiff elevates his legs 3 to 4 hours a
27  day for 30 minutes to an hour at a time to help with swelling. (AR 59-60). He naps 2 to 3 times a
28  day and has difficulty with focus and concentration. (AR 60-61). Plaintiff testified that he uses a

walker "a little bit," and has difficulty gripping and grasping with his right hand. (AR 61).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind

3

of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the

4

1  claimant is capable of performing work that he or she has performed in the past (past relevant
2  work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of
3  performing past relevant work, the Commissioner must find that the claimant is not disabled. 20
4  C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the
5  analysis proceeds to step five.

6  At step five, the Commissioner considers whether, in view of the claimant's RFC, the
7  claimant is capable of performing other work in the national economy. 20 C.F.R. §§
8  404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also
9  consider vocational factors such as the claimant's age, education, and past work experience. 20
10 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other
11 work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§
12 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis
13 concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20
14 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

15 The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180
16 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the
17 Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such
18 work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2),
19 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

20                          **V.   ALJ'S FINDINGS**

21 At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity
22 since December 9, 2020, the amended alleged onset date. (AR 19). At step two, the ALJ found
23 that Plaintiff has the following severe impairments: obesity; aggravating type II diabetes mellitus;
24 degenerative disc and joint disease of the lumbar spine; gout; hypertension; and the residual
25 effects of gunshot wound to the middle finger of the right hand and lumbar spine due to retained
26 bullet fragment at L1. (AR 19). At step three, the ALJ found that Plaintiff does not have an
27 impairment or combination of impairments that meets or medically equals the severity of a listed
28 impairment. (AR 19). The ALJ then found that Plaintiff has the RFC to

>perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no more than frequent fingering with the right hand. The claimant can climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds. The claimant can balance occasionally and stoop occasionally.

(AR 21). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 25). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including stock checker, routing clerk, and counter attendant. (AR 25-26). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from December 9, 2020, through the date of the decision. (AR 26).

## VI.    ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred in considering the medical opinion evidence; and

2. Whether the ALJ erred in the evaluation of Plaintiff's subjective testimony.

(Doc. No. 14 at 14-23).

## VII.    DISCUSSION

### A. Medical Opinion

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior

6

administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id.* at 792. This means that the ALJ "must 'articulate ... how persuasive'

1 [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Plaintiff argues the ALJ erred in considering the treating medical opinion of Myint Zaw, M.D. (Doc. No. 14 at 16-18). In November 2022, Dr. Zaw completed a physical medical source statement opining that Plaintiff can walk one city block without rest or severe pain; he can sit for 45 minutes before he needs to get up; he can stand for 20 minutes before needing to change positions; he can sit and stand/walk for about 2 hours total in an 8-hour working day; he needs a job that permits shifting positions at will from sitting, standing, or walking; he needs to walk once per day for 5 minutes during an 8-hour working day; he needs to elevate his legs for 20% of an 8-hour working day; he can frequently lift 20 pounds; he can occasionally twist, stoop, crouch, and climb stairs; he can never climb ladders; he does not have significant limitations with reaching handling, or fingering; he is likely to be "off task" for 10% of a typical workday; he is capable of tolerating moderate stress; he is likely to absent about three days per month as a result of the impairments or treatment; and he will need to take unscheduled breaks 3 times during a working day for 10-15 minutes before returning to work. (AR 354-57). The ALJ found Dr. Zaw's opinion less persuasive. (AR 24).

As to supportability, the ALJ generally found the opined limitations "are unsupported because Dr. Zaw does not provide any objective findings aside from pain in his back and hands along with high blood pressure." (AR 24). Under the new regulations, "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support" the medical opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1), 416.920c(c)(1); *see also Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusion."); *see also Gitchell v. Comm'r of Soc. Sec.*, 2023 WL 1785914, at *15 (E.D. Cal. Feb. 6, 2023) (holding ALJ appropriately considered supportability factor by finding opining doctor did not cite to specific objective findings to support his opinions). The Ninth Circuit has held that when a treating physician's check-box opinion was "based on significant experience

8

1  with [Plaintiff] and supported by numerous records, [it was] therefore entitled to weight that an
2  otherwise unsupported and unexplained check-box form would not merit." *Garrison v. Colvin*,
3  759 F.3d 995, 1013 (9th Cir. 2014).  Plaintiff argues the ALJ failed to explain how Dr. Zaw's
4  reference to "pain in back" in the clinical findings section of his opinion, and repeated reference
5  in his treatment notes to "back pain" along with prescription of pain medication and referral to
6  pain management specialists, "is not considered relevant to Dr. Zaw's opinion as to [Plaintiff's]
7  functionality." (Doc. No. 14 at 16-17 (citing AR 325-26, 367-87, 390-95, 398-403, 406, 410,
8  413, 415-18, 431, 433, 437-38, 441, 445, 450, 456, 482-83, 488, 493-95, 499, 530, 532-33, 538,
9  542, 544-45, 547, 549, 550-54, 557)).

10           However, aside from the single reference to "pain in back" as a "clinical finding and
11 objective sign" in Dr. Zaw's opinion, Plaintiff relies entirely on his own subjective reports of
12 back pain as noted in the "review of systems" portion of Dr. Zaw's treatment notes, Dr. Zaw's
13 ongoing prescriptions of pain medication, and Dr. Zaw's referral to a pain management specialist.
14 Thus, Plaintiff does not cite any *objective* evidence in Dr. Zaw's treatment notes that would
15 explain the severity of the opined limitations. *See* 20 C.F.R. § 404.1520c(c)(1), 416.920c(c)(1);
16 *see also Hatfield v. Berryhill*, 2017 WL 4161690, at *5 (W.D. Wash. Sept. 18, 2017) (noting that
17 certain symptoms were circled in the "forms' 'review of systems' section, which records a
18 patient's self-reported medical history, not in the 'physical examination' section, which would
19 indicate objective findings.").  Moreover, a review of the longitudinal record in this case, which is
20 largely comprised of treatment visits with Dr. Zaw including the records cited by Plaintiff in
21 support of this argument, confirms that Dr. Zaw's treatment records "contained few objective
22 findings, and the most predominant finding was that Plaintiff did not have edema," with
23 intermittent notations that Plaintiff's diabetes was well-controlled, and normal findings on
24 extremities, back, and neurological examinations. (Doc. No. 16 at 9; *see* AR 23, 370 (normal
25 extremities, back, neurological examination), 372, 373 (diabetes well controlled and no edema),
26 376 (same), 379 (diabetes well controlled), 380 (diabetes well-controlled and no edema), 382
27 (same), 384-86 (same), 391 (no edema), 393-95 (same), 396 (normal extremities, back, and
28 neurological examination), 398-405 (no edema)).  Based on the foregoing, it was reasonable for

9

the ALJ to find the severity of Dr. Zaw's limitations on walking, sitting, and standing are unsupported because Dr. Zaw did not "present" objective findings, as required under the regulations, aside from a single "clinical finding" of "pain in back and hands" recorded as part of the opinion. *See* 20 C.F.R. § 404.1520c(c)(1), 416.920c(c)(1).

As to consistency, the ALJ found the opined limitations are inconsistent with the record. (AR 24). For example, the ALJ noted that in July 2022 Plaintiff described his lifestyle as "active" and Plaintiff was able to work 8 hours a day, 5 days a week at a medium exertion job taking care of his mother "from 2009 until she passed away in 2020 (notably with the bullet fragments in spine and hand), "without an increase in symptoms or reported decline in function" per Plaintiff's hearing testimony. (AR 24 (citing AR 47-48, 370). Plaintiff argues (1) the ALJ "mischaracterized" the record because the treatment record referencing Plaintiff's lifestyle as "active" was signed by Dr. Zaw and was "not authored by" Plaintiff; (2) the ALJ failed to discuss evidence consistent with Dr. Zaw's opinion such as June 2021 x-rays showing a bullet fragment in Plaintiff's vertebra and moderate levels of disc degeneration and levoscoliosis in the lumbar spine; and (3) the ALJ's reliance on Plaintiff's activities before the alleged onset date of disability is misplaced (Doc. No. 14 at 17-18).

First, the ALJ reasonably inferred that Plaintiff self-reported he was "active" as part of the "interval history – physical activity and sports" section of the July 2022 intake form; moreover, regardless of who signed the intake form and whether Plaintiff himself referred to himself as "active," it was reasonable for the ALJ to find any notation of "active" lifestyle was inconsistent with the severity of the opined limitations. *See Tommasetti*, 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence). Second, despite Plaintiff's argument to the contrary, the ALJ did consider the June 2021 x-ray of Plaintiff's lumbar spine showing mild grade 1 retrolisthesis at L2-L3, disc degeneration within the lumbar spine, mild to moderate levoscoliosis of the thoracolumbar spine, and bullet fragment within the L1 vertebral body. (AR 23 (citing AR 352)). Third, Plaintiff is correct that, generally, evidence outside the "actual period at issue" may be of limited relevance. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010). However, as part of the decision, the ALJ specifically notes that Plaintiff stopped

1  performing the work for his mother because she passed away. (AR 23-24, 47-48). Plaintiff does
2  not cite, nor does the Court discern, any change in Plaintiff's functional abilities after the alleged
3  onset date. (Doc. No. 16 at 10-11 ("There is no evidence in Dr. Zaw's notes or form other
4  medical sources that [the bullet fragments sustained at age 17 and 27, respectively,] caused more
5  limitations after the alleged onset date than before the alleged onset date.")). Thus, it was
6  reasonable for the ALJ to discount Dr. Zaw's opined limitations as inconsistent with Plaintiff's
7  reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 601-02 (1999).

8  Finally, while not challenged by Plaintiff, the ALJ provided a detailed summary of the
9  medical evidence, largely comprised of Dr. Zaw's treatment notes, including x-rays showing mild
10 grade 1 retrolisthesis at L2-L3, disc degeneration within the lumbar spine, mild to moderate
11 levoscoliosis of the thoracolumbar spine, and bullet fragment within the L1 vertebral body;
12 diagnosis of diabetes mellitus; diagnosis of gout mainly at the medial aspect of Plaintiff's left
13 great toe, both hands, knees, and ankles; normal respiratory findings; normal cardiovascular
14 findings despite high blood pressure after not taking medication; consistent findings of no edema
15 on examination; negative straight leg raising; no back pain with knee extensions; no direct spinal
16 tenderness; flexion deformity at the proximal interphalangeal joint of Plaintiff's right middle
17 finger; scant pitting edema distally in both legs with significant bilateral pes planus; normal motor
18 strength; normal sensations and reflexes; normal range of motion, and good tone. (AR 23 (citing
19 AR 346-48, 352, 373-74, 376-78, 379-80, 382)). Based on the foregoing, and despite evidence in
20 the record that could be considered favorable to Plaintiff, it was reasonable for the ALJ to
21 conclude the severity of the limitations assessed by Dr. Zaw was not consistent with the evidence
22 from other medical sources in the longitudinal treatment record. 20 C.F.R. §§ 404.1520c(c)(2),
23 416.920c(c)(2); *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence
24 is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be
25 upheld.").

26 After viewing the ALJ's reasoning in light of the record as a whole, the ALJ's finding that
27 Dr. Zaw's opinion was less persuasive is supported by substantial evidence after proper
28 consideration of the supportability and consistency factors. The Court finds no error in the ALJ's

11

consideration of the medical opinion evidence.

**B. Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. (AR 22).

Fist, ALJ found Plaintiff's statements "are inconsistent because the medical evidence documents only mild objective findings." (AR 22-24). Medical evidence is a relevant factor in

determining the severity of a claimant's pain and its disabling effects, but the ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). As an initial matter, presumably as to his claimed lumbar spine impairment, Plaintiff argues the ALJ "does not explain the basis for considering a loose bullet fragment within [Plaintiff's] lumbar spine in the L1 vertebra to be a 'mild' objective finding nor how such an objective finding is inconsistent with [Plaintiff's] testimony regarding his pain," and the ALJ does not appropriately address Plaintiff's obesity. (Doc. No. 14 at 20); *see Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("providing a summary of medical evidence in support of a [RFC] finding is not the same as providing clear and convincing reasons for finding the claimant's testimony not credible"). Here, however, the ALJ specifically found that Plaintiff's statements regarding difficulty walking and lifting are not supported by medical records. (AR 23). For example, the ALJ noted Plaintiff had a slow gait at the April 2021 consultative examination but did not have an assistive device at any exams, and the examiner noted no back pain with knee extensions in the seated position, negative straight leg raising signs, no direct spinal tenderness, normal motor strength, normal sensations, normal reflexes, normal range of motion in all extremities, and good tone. (AR 23, 346-48). Moreover, Plaintiff does not cite, nor does the Court discern, any evidence of specific functional limitations as a result of his obesity and/or the bullet fragment lodged in Plaintiff's spine that were not properly accounted for in the assessed RFC. *See Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

Next, Plaintiff argues the ALJ failed to address treatment records reflecting clinical findings of edema and prescribed mediation for edema, and "failed to consider that subsequent examinations by Dr. Zaw did not find edema precisely because of the daily elevation of his legs that [Plaintiff] described in his testimony." (Doc. No. 14 at 20). This argument is unavailing. Here, the ALJ explicitly acknowledged Plaintiff's testimony that he had swelling in his legs and findings on examination of scant pitting edema distally in both legs; however, the record is replete with findings of no edema on examination "thus undermining [Plaintiff's] claim to need to

13

elevate his lower extremities on a regular basis during an average day." (AR 23 (citing, e.g., AR 347, 373-74, 376-77, 380, 382)). Moreover, Plaintiff does not cite any evidence in the record to support the argument that Dr. Zaw's examinations found "no edema" because Plaintiff was elevating his legs daily. Thus, regardless of evidence that could be considered favorable to Plaintiff, the lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's symptom claims.

Second, the ALJ found Plaintiff's "self-reported activities of daily living are not consistent with his allegations of medical symptoms." (AR 23). A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). In support of this finding, the ALJ noted Plaintiff drives a car and goes grocery shopping, and the ALJ cited Plaintiff's self-reports in exertional activity and pain questionnaires that he lives alone, does his own grocery shopping monthly, and sweeps floors with breaks for rest. (AR ). Plaintiff contends the ALJ fails to discuss the duration and frequency of Plaintiff's grocery shopping and driving and further argues "[s]uch minimal activity does not constitute substantial evidence to reject Plaintiff's testimony." (Doc. No. 14 at 22). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a). Thus, despite evidence that could be viewed more favorably to Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's reported activities were inconsistent with the severity of his allegations of entirely disabling limitations including inability to stand for more than 10-15 minutes and inability to walk half a block. (AR 54-56). *Molina*, 674 F.3d at 1113; *see also Tommasetti*, 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence); *Burch*, 400 F.3d at 679 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's

conclusion that must be upheld."). This was a clear and convincing reason for the ALJ to discount Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

## VIII. CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly considered the medical opinion evidence and Plaintiff's symptom claims. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED.
2. Defendant's Cross-Motion for Summary Judgment (Doc. No. 16) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.
3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:   September 22, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE